UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION NO: 12-00093-01 |
| --- | --- |
| | CIVIL ACTION NO: 15-00101 |
| VERSUS | JUDGE DONALD E. WALTER |
| ALCIDES ROMAN (01) | MAG. JUDGE MARK L. HORNSBY |

## MEMORANDUM RULING & ORDER

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 [Docs. ##37, 41], filed by Defendant-Petitioner Alcides Roman (hereinafter, "Petitioner" or "Roman"). The Government filed a response [Doc. #43]. Petitioner sought, and was granted, leave to file a reply [Docs. ## 44, 45], but no reply was filed. For the following reasons, the motion is **DENIED**.[1]

## BACKGROUND

On March 28, 2012, a federal grand jury in the Western District of Louisiana returned a 2-count indictment charging Petitioner, Alcides Roman d/b/a Amstar Investment Properties, with two counts of attempt and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. [Doc. #1]. On September 20, 2012, pursuant to a written plea agreement, Petitioner pled guilty to Count One of the indictment. [Doc. #22]. A presentence investigation report ("PSR") was prepared on November 15, 2012, and supplemented with additional victim impact information in December 2012. [Doc. #23].

---

[1] Because Petitioner's claims are contrary to law and plainly refuted by the record, no evidentiary hearing is required. *United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989).

While living in Florida and doing business as Amstar Investment Properties, Petitioner purported to have the capability of procuring business loans in exchange for fees. [Doc. #31, pp. 11-14]. In November 2007, Petitioner procured wire transfers of money from two different advanced fee contracts, the first of which involved transfers to and from the state of Florida and Springhill, Louisiana, within the Western District of Louisiana. [Doc. #23, p. 4, ¶¶ 6-7]. Petitioner procured, from victim Ed Kenyan, a "letter of commitment" and a $200,000 wire transfer, in exchange for Petitioner seeking and procuring a $26 million business loan on behalf of Kenyan. Petitioner represented to Kenyan that $50,000 constituted a nonrefundable, advance fee, but that the remaining $150,000 was refundable in the event Petitioner failed to procure a loan. The second contract involved victims in Texas, who wired a $140,000 "retainer," of which $40,000 was nonrefundable, in exchange for similar loan procurement services. Petitioner never procured loans on behalf of these victims, nor did he use the money in any efforts to procure such loans or refund any amount in lieu of procuring the loans. [Doc. #31, p. 14; Doc. #23, p. 4, ¶¶ 7-8].

Using the United States Sentencing Guidelines ("USSG") Manual effective November 1, 2012, the PSR calculated Petitioner's offense level, as follows. [Doc. #23, p. 5, ¶12]. Petitioner's base offense level under U.S.S.G. § 2B1.1(a)(1), for a conviction under 18 U.S.C. § 1343, was 7. *Id.* at ¶13. Because the intended loss attributed to Petitioner was $340,000, he received a 12-level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(G); however, Petitioner received the full 3-point reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1(a), (b), resulting in a total offense level of 16. *Id.* at ¶¶ 13-14, 19. Although Petitioner had four prior convictions, only one criminal history point was assessed, resulting in a criminal history category of I. *Id.* at p. 7, ¶33. The PSR also acknowledged that Petitioner had engaged in other criminal conduct, similar to

that underlying the instant offense of conviction, and was the subject of several other fraud investigations, outside of the jurisdiction of this Court. *Id.* at p. 6, ¶23.

On January 14, 2013, Petitioner was sentenced by the Honorable Judge Tom Stagg to 41 months' imprisonment, followed by three years' supervised release, and ordered to pay restitution in the amount of $340,000. [Doc. #26]. Judge Stagg arrived at this sentence after considering the factors set forth in 18 U.S.C. § 3553(a), and determining that the advisory guideline range of 21 to 27 months yielded an "inadequate punishment." [Doc. #25; Doc. #32, p. 12, ll. 17-20]. He therefore added four levels, resulting in a total offense level of 20 (and a guideline range of 33 to 41 months). [*Id.* at ll. 20-23]. Petitioner's counsel objected to the sentence. [Doc. 32, p. 16, ll. 7-9]. Petitioner appealed his sentence to the United States Court of Appeals for the Fifth Circuit, arguing that the sentence was substantively unreasonable. The Fifth Circuit affirmed Petitioner's sentence, finding that the sentence was neither plainly erroneous nor unreasonable. [Doc. #35].[1] The decision was issued as mandate on November 11, 2013. *Id.* The instant motion, alleging ineffective assistance of counsel, was signed and dated by Petitioner on January 14, and filed in this Court on January 20, 2015. [Doc. #37].

## **LAW & ANALYSIS**

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court when: (1) "the sentence was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the

---

[1] The sentencing judge orally described the sentence as an upward "departure," while the statement of reasons indicates that the sentence was a "variance." [Doc. #35, p. 3; *see* Doc. #32, p. 12, ll. 17-23 (sentencing transcript); Doc. #25, p. 3 (statement of reasons)]. However, as recognized by the Fifth Circuit, "[t]he precise characterization is not significant because the sentence is neither plainly erroneous nor unreasonable." *Id.*

sentence "is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a); *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

"As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted)). Rather, after a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)).

Courts may consider claims for ineffective assistance of counsel brought for the first time in a § 2255 motion. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong of the *Strickland* test will result in a finding that counsel's performance was constitutionally effective. *Id.* at 696; *see also Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "In any ineffectiveness case, a particular decision not to investigate

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.*

Here, Petitioner claims that his counsel was ineffective during the sentencing phase, for failing to investigate the facts and circumstances surrounding Petitioner's "prior criminal and litigation history, and . . . business dealings." [Doc. #37, p. 4; Doc. #41, pp. 16-25].[2] Petitioner believes it to be noteworthy that, "of the 34 cases against him" at the time he was sentenced,

> 21 relate[d] to domestic relations, foreclosure on personal mortgages, small claims cases where less than $100.00 is at issue, and traffic infractions. Of the 13 cases related to Roman's business or personal criminal background, eight were breach of contract actions filed from November 2006 through 2009, and one was an 'Other' civil action, type unknown. Two of the four criminal matters were never adjudicated.

[Doc. #41, pp. 19-20]. He believes that these and other details related to his criminal and civil litigation history contributed to the sentencing judge's misconception that Petitioner's criminal history was underrepresented in the PSR. *Id.* at pp. 20-22. He also specifically challenges counsel's failure to investigate the allegations contained in a victim impact letter, written by a man named Jason Bell, and read into the record by the judge, during the sentencing hearing. [Doc. #41, p. 15, ¶23; Doc. #32, pp. 8-10]. Each of these categories, as well as Petitioner's other arguments concerning his counsel's ineffectiveness, will be addressed below. However, this Court ultimately rejects Petitioner's conclusory allegations that counsel was constitutionally deficient in failing to waste limited time and resources to "investigate" facts which were entirely

---

[2] Petitioner attempts to challenge whether he received proper notice; however, said challenges are somewhat circular, and his reliance on the cited authority is misplaced. "Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues." *Irizarry v. United States*, 553 U.S. 708, 715 (2008). A review of the record, including the sentencing transcript, belies any claim that Petitioner was not afforded an adequate opportunity to confront and debate all relevant issues.

known or knowable to the Petitioner himself, and furthermore, finds that Petitioner has failed to establish any prejudice.

At the commencement of Petitioner's sentencing hearing, Petitioner confirmed that he'd had an adequate opportunity to go over the PSR with his counsel, and Petitioner himself, his attorney, and counsel for the Government all confirmed that there were no objections to the PSR. [Doc. #32, p. 2]. As noted, the PSR referenced Petitioner's criminal history, as well as other criminal conduct and fraud investigations in other jurisdictions. Later in the hearing, upon inquiry from the judge concerning Petitioner's "problems in Florida," Petitioner had an opportunity to explain:

> THE COURT: And you are also involved in some problems in Florida as well, as I read in the [PSR]?
>
> THE DEFENDANT: I have some civil matters in Florida.
>
> THE COURT: No criminal?
>
> THE DEFENDANT: No criminal. Only civil. People who have, unfortunately, also were not paid on time and were owed money to because of my company going bankrupt and investments not paying off. Unfortunately, I wasn't able to pay them back either. So yes, I do have people pending that I owe money to as well.

[Doc. #32, p. 3]. Thus, not only was Petitioner himself aware of all facts and circumstances underlying his history and "business dealings," but Judge Stagg was also presented with Petitioner's version of the events surrounding his various other legal matters.

As to Petitioner's criminal history, Judge Stagg explicitly stated, more than once, that he was unable to use or consider any arrests not followed by convictions. [Doc. #32, p. 11, ll. 2-4, 20-25]. As recognized by the Fifth Circuit on direct appeal, "the district court acknowledged that it could not take Roman's arrests into account, and it did not discuss them at length or overtly rely on them as the district court had done in *United States v. Johnson*, 648 F.3d 273, 278-79 (5th

Cir. 2011)." [Doc. #35, p. 3]. The Fifth Circuit found that the "district court did not commit any clear and obvious error by referring to Roman's arrests." *Id.* (citation omitted). Any suggestion that Petitioner's sentence was improperly based on his arrest record is meritless.

Pursuant to 18 U.S.C. § 3771, and over defense counsel's objection, Judge Stagg properly allowed a statement to be made on behalf of crime victim, Ed Kenyan. [Doc. #32, pp. 5-6]. He also read into the record a letter, delivered that day, from victim Jason Bell, described by Judge Stagg as having "a tolerably low opinion of [Petitioner] that's shared by some other people who have voiced similar feelings." *Id.* at pp. 8-10. In response, Petitioner disclaimed knowing Mr. Bell. *Id.* On appeal, the Fifth Circuit "reject[ed] [Petitioner's] contention that the court gave too much weight to [the] letter . . . [which] was substantially consistent with the [PSR] and [Petitioner's] own concession that he faced civil litigation and owed several people money." [Doc. #35, p. 3]. The Fifth Circuit further found that "Bell's letter, plus testimony and reports from other victims about non-monetary losses and monetary losses they were seeking to recover in civil litigation, all reflected 'the nature and circumstance of the offense and the history and characteristics of the defendant' as well as 'the seriousness of the offense.'" [Doc. #35, pp. 3-4 (quoting 18 U.S.C. § 3553(a)(1) & (a)(2)(A))]. This Court adopts that finding as responsive to Petitioner's assertion that counsel should have somehow known of and undertaken to investigate the substance of the statements contained in Bell's letter. Here, counsel had no such duty and any such efforts would have been fruitless, as Bell's letter was consistent with all other relevant facts and circumstances.

Petitioner further challenges defense counsel's failure to "advise him on allocution," as having caused him to be unfairly penalized for "trying to express his apology, and to explain that his misconduct had its roots in desperation brought on by the souring market[.]" [Doc. #41, pp.

21-22]. At sentencing, Judge Stagg explained the right to allocution and, at Petitioner's request, allowed him to speak first, on his own behalf. [Doc. #32, pp. 2-3]. He proceeded as follows:

> I would like to express my deep apology to the victim and anybody that I have hurt in regards to this transaction or this case, and let them know that it's not something I intended to do and circumstances beyond my control unfortunately happened and I fell into this predicament; and here I am today and I am facing whatever I have to face. So I do deeply apologize to the Court and to everybody else who basically was involved.

*Id.* at p. 3. Counsel for both Petitioner and the Government then recommended a within-Guidelines sentence. *Id.* at pp. 4-5. Judge Stagg then stated:

> I have listened to everybody. I admit to having read the [PSR]. And the statement and allocution made by the defendant seems, Mrs. Marak, to deflect acceptance of responsibility. There's charges that he defrauded these people and that there has to be an intent to defraud. [¶] If he says this happened because the markets changed and something else happened that he did not intend to defraud these people of the money, if he didn't, where is the acceptance of responsibility? He might lose three points.

[Doc. #32, pp. 7-8]. After conferring with his counsel, Petitioner stated that he did accept responsibility for defrauding the victims and apologized that his "statement maybe was lacking that [acceptance]." *Id.* at p. 8. Judge Stagg emphasized that "[i]t wasn't accidental; it wasn't a change in markets. It . . . was kind of like a Ponzi scheme." *Id.* In light of the sentencing transcript as a whole, it is obvious to this Court that Petitioner was given every opportunity to speak on his own behalf; he has only himself and his criminal actions to blame for the penalty received.

> Before pronouncing sentence, Judge Stagg made the following remarks:
>
> I have looked at the sentencing requirements in 3553(a), where I have to note the nature and circumstance of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense and to provide just punishment and promote respect for the law, the need to afford adequate deterrence to criminal conduct, the need to protect the public from further crimes of the defendant, the need to provide restitution for victims. [¶] For all of the reasons that I have just discussed, the Court considers that the total offense level

of 15 [sic] and a Criminal History Category of I yields an inadequate punishment at 27 months.

[Doc. #32, p. 12]. The judge then explained his four-level departure, in arriving at an offense level of 20, and selecting a sentence at the high end of the range, resulting in 41 months' imprisonment. *Id.* at p. The oral pronouncement was followed by this statement: "All the factors in 3553(a) trend towards increasing the level of the defendant's offense level." *Id.* at pp. 12-13. Judge Stagg properly weighed the § 3553(a) factors in making an individual assessment of a fair and just sentence for Petitioner, despite Petitioner's own efforts, and the argument of his counsel, to be sentenced within the *advisory* sentencing range.

Petitioner argues, without specificity or supporting facts, that there is a "reasonable probability" that proper investigation by defense counsel would have prevented the district judge from departing or varying upward "from the advisory Guidelines to which the Government and defendant had agreed." *Id.* It is worth emphasizing, here, that the Federal Sentencing Guidelines are "advisory." *See United States v. Booker*, 543 U.S. 220, 245 (2005). Although Petitioner explicitly recognizes that fact, his entire argument assumes away the discretion that the sentencing judge held and so clearly exercised, in determining an appropriate and just sentence in this case. District courts may not "presume" that a within-Guidelines sentence is appropriate; rather, they must "make an individualized assessment" of the appropriate sentence, considering all of the § 3553(a) factors, "based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Upon due consideration, in light of the Judge Stagg's statements and the record as a whole, it is the opinion of this Court that Petitioner's instant assertions may well have worked to his detriment, had they been urged through either his own allocution or defense counsel's argument at the time of sentencing.

*Strickland* imposes upon an attorney a duty to make reasonable investigation, but a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome[.]" *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (emphasis added) (quoting *Green, supra*, 882 F.2d at 1003). Petitioner has failed to go beyond mere conclusory allegations to show what counsel's investigation might have revealed, how it might have altered the sentencing judge's consideration of the relevant § 3553(a) factors, or that he might have received a less severe sentence as a result of any such investigation.

Although Petitioner also challenges counsel's general objection to the above-guidelines sentence for not being "legally adequate," the Fifth Circuit upheld the sentence as neither plainly erroneous nor unreasonable. [Doc. #37, p. 4; Doc. #35]. This Court echoes the Fifth Circuit, in finding that Petitioner "fail[ed] to show that his sentence would have been less severe if the court had been required to provide some further explanation." [Doc. #35, p. 4].

Accordingly, for all of the reasons stated herein, Petitioner has not only failed to show that counsel's performance was deficient, but he has also wholly failed to show any prejudice. A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)). Nonetheless, the "prejudice" element requires more than a mere allegation; the defendant must affirmatively prove it. *United States v. Thompson*, 44 F.3d 1004, 1995 WL 10515, at * 2 (5th Cir.

1995) (unpublished table decision); *see also Green v. Johnson*, 160 F.3d 1029, 1042–43 (5th Cir. 1998) ("[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). As explained above, Petitioner has not shown that any amount of investigation, information, or argument would have resulted in the imposition of a less severe sentence.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Petitioner Alcides Roman's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 [Doc. #37, as supplemented by Doc. #41], is hereby **DENIED and DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED**, pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability is **DENIED**, for failure to make a substantial showing of the denial of a constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 31 day of January, 2018.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE